UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANGEL MORENO, § | | |
| Plaintiff, § | | |
| v. § | | C.A. No. C-03-500 |
| TEXAS A&M UNIVERSITY- § | | |
| KINGSVILLE (TAMUK), DR. § | | |
| RUMALDO Z. JUAREZ, JIM § | | |
| HARTSFIELD, and DAVID STANDISH, § | | |
| Defendants. § | | |

## MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S SCHULTEA STATEMENT

Pending before the Court is the issue of whether plaintiff has met his burden under *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995).

The Court had previously found that defendants were entitled to qualified immunity in its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Based on Qualified Immunity (D.E. 28). However, on February 15, 2005, the Court vacated this order as to plaintiff's claims against defendants in their individual capacities because the Court did not give sufficient notice of the conversion of the motion to dismiss to one for summary judgment.

The Court then ordered the plaintiff to file his *Schultea* statement. *See Schultea v. Wood*, 47 F.3d 1427(5th Cir. 1995). Under *Schultea*, a plaintiff must first "support[] his [42 U.S.C. § 1983] claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."

*Id.* at 1434. As the statement has been filed, the issue of entitlement to qualified immunity is ripe for determination.

Plaintiff claims that these defendants violated his First Amendment rights to freedom of speech and association. Specifically, plaintiff alleges that he was terminated from employment at Texas A&M University Kingsville (TAMUK) and treated adversely in the complaint and appeal process in retaliation for 1) his speech on safety concerns for working conditions, 2) his speech on union activities, and 3) his association with the union.

The doctrine of qualified immunity limits a public official's section 1983 civil liability for the performance of discretionary functions. *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 284 (5th Cir. 2002). Officials are protected from liability for civil damages so long as their conduct has not violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Creighton*, 107 S.Ct. 3034, 3038 (1987); *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982). In evaluating a claim for qualified immunity, "[f]irst, a court must decide whether the plaintiffs' allegations, if true, establish a violation of a clearly established right. Second, if the plaintiffs have alleged a violation, the court must decide whether the conduct was objectively reasonable in light of clearly established law at the time of the incident. Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively

reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005)(internal citations omitted).

To establish a § 1983 First Amendment retaliatory discharge claim, a plaintiff must show: (1) he suffered an adverse employment action; (2) the speech at issue involved matters of public concern; (3) plaintiff's interest in the speech outweighs the government's interest in efficiency; and (4) the speech precipitated the adverse employment action. *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir.2004). "[I]f this test is passed, the burden shifts to defendants to show that they would have come to the same conclusion in the absence of the protected conduct." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004).

In the present case, it is clear that plaintiff suffered an adverse employment action as he was terminated from his employment.[1] Whether the speech at issue relates to a matter of public concern is a question of law to be resolved by the Court. *Tompkins v. Vickers*, 26 F.3d 603, 606 (5th Cir. 1994). Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. *Connick v. Myers*, 103 S.Ct. 1684, 1690 (1982). Generally, the inquiry is whether the public employee was speaking as a citizen upon matters of public concern or as an employee upon matters only of personal interest. *Harris*, 168 F.3d at 221. The existence of an element of personal interest on the part of an

---

[1]Plaintiff alleges that the adverse employment action also included his treatment during the complaint and appeals process.

employee does not prevent a finding that the speech as a whole raises issues of public concern; however, an employee cannot transform a personal conflict into an issue of public concern simply by arguing that individual concerns might have been of interest to the public under different circumstances. *Bradshaw v. Pittsburg Indep. Sch. Dist.*, 207 F.3d 814, 816 (5th Cir. 2000). Thus, if "the individual spoke primarily as an employee rather than as a citizen, [his speech] is not regarded as addressing a matter of public concern." *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 341-42 (5th Cir. 2003).

Plaintiff urges that he spoke on two matters of public concern: (1) safety concerns about working conditions in the university's physical plant and (2) support of the union, AFSCME Local 3230. As to the former, plaintiff states that his letter to the editor of The Kingsville Record, his participation in the "Jobs with Justice" rally, and his participation in the LULAC meeting were all about safety concerns he and his coworkers had about working conditions at TAMUK. As to the latter, plaintiff states that his organization of the "Jobs with Justice" rally, seeking representation by the union twice for the grievance procedure (and twice being denied such representation), and affidavit testimony in support of the union in the state suit brought by AFSCME Local 3230 against TAMUK to allow TAMUK employees the right to designate the union as their representative in the grievance procedure were all matters of speech in support of the union.

***Alleged Speech on Working Conditions:***

The Court renews its finding that plaintiff's letter to the editor of the Kingsville

Record contained speech predominantly about a personal conflict–the handling of a personal grievance that plaintiff had filed against the management at the Physical Plant–which does not rise to the level of public concern. As to the participation in the "Jobs with Justice" rally and in the LULAC meeting, plaintiff has provided no evidence or specific example in his *Schultea* statement or supporting attachments that he engaged in any matter of speech of public concern. The newspaper article on the rally does not detail any speech made by the plaintiff; rather, it only features speech made by his wife. The agenda of the LULAC meeting provides no evidence of plaintiff's actual engagement in speech on matters of public concern. Plaintiff does not specify the extent of his speech, if any, at that meeting. Therefore, the Court finds that plaintiff has not supported his allegations that he engaged in speech on matters of public concern regarding workplace safety issues with the factual specificity and precision required by *Schultea*.

***Alleged Speech in Support of Union Activities:***

As to the alleged speech in support of the union, plaintiff is correct in his claim that, generally, speech regarding union activities is speech on a matter of public concern. *See Communications Workers of America v. Ector County Hosp. Dist.*, 392 F.3d 733, 741 (5th Cir. 2004). However, plaintiff has provided no factually specific evidence of his speech in support of the union through his participation in the rally or through seeking representation by the union in the grievance process. Furthermore, plaintiff has not provided the affidavit that he submitted in his state court suit. However, the Court will

construe such affidavit as being speech on a matter of public concern in light of the article on the suit, which appears to meet the factual specificity requirement of *Schultea*. Therefore, the Court must proceed to the remaining parts of the four-part test for a First Amendment retaliatory discharge claim. The Court will also consider plaintiff's claims of retaliation based on his political association with the union at this time.[2]

If speech can be fairly characterized as a matter of public concern, then the Court must balance the employee's interest, as a citizen, in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *See Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (citing the *Pickering v. Board of Education*, 88 S.Ct. 1731, 1734-35 (1968) balancing test). It is for a jury to resolve any remaining factual disputes as to whether plaintiff's protected speech was a substantial or motivating factor in the adverse employment decision, or whether the employer would have made the same decision in the absence of the protected speech. *Id.* As defendants did not address this balancing test, it is clear that plaintiff's speech on union activities in his state court affidavit and union association outweighed the government's interest in efficiency.

In evaluating whether plaintiff's speech on union activities or union membership precipitated the adverse employment action, the question becomes whether or not the

---

[2]"A public employee's claim that he has been discharged for his political association in violation of his right to freely associate is not subject to the threshold public concern requirement." *Coughlin v. Lee*, 946 F.2d 1152, 1158 (5th Cir. 1991). Therefore, plaintiff's allegations concerning union activities must be subject to the following inquiry, without an analysis of the public concern requirement.

defendants knew of plaintiff's speech on union activities or union membership and what allegations exist regarding each defendant's involvement in the adverse employment action. Defendant Standish states in his deposition that he did not know of plaintiff's union membership until the present lawsuit was filed. Further, defendant Standish states that he was not aware that plaintiff provided affidavit testimony in that lawsuit. Plaintiff presents no evidence to raise a factual dispute on this matter. Therefore, it is clear that defendant Standish is entitled to qualified immunity as to the claim against him in his individual capacity as plaintiff's *Schultea* statement and supporting exhibits do not establish a violation by Standish of plaintiff's clearly established First Amendment rights.

    Plaintiff alleges that defendant Hartsfield, as coordinator of the complaint and appeals process at TAMUK, twice denied plaintiff's requests to designate the union as his representative in the complaint and appeals process. Plaintiff further alleges that because his grievance hearing was conducted without a union representative, his termination was sustained. It follows that plaintiff's speech on union activities (the affidavit in the state union suit) is not at issue as to the allegations that defendant Hartsfield violated plaintiff's First Amendment rights. Rather, Hartsfield's alleged violations are based upon a reaction to plaintiff's association with the union. It is apparent from the November 21 and 26, 2002 correspondence from Hartsfield to plaintiff (regarding the denial of union representation of plaintiff) that Hartsfield knew of plaintiff's association with the union. However, plaintiff's allegation that his termination was sustained due to his lack of union

representation (which was a result of Hartsfield's actions) is only a conclusory one, without a factual foundation. The Court will not rely upon such a conclusory, non-factual allegation in its determination of whether plaintiff's *Schultea* statement and supporting exhibits establish a violation by Hartsfield of plaintiff's clearly established First Amendment rights. As such, the Court finds that there is no factual dispute over whether Hartsfield's awareness of plaintiff's speech on union activities or union association precipitated the adverse employment action. Thus, Hartsfield is entitled to qualified immunity as to the claim against him in his individual capacity as plaintiff's *Schultea* statement and supporting exhibits do not establish a violation by Hartsfield of plaintiff's clearly established First Amendment rights.

Defendant Juarez does acknowledge that he became aware that plaintiff was a union member in December 2002 (the letter of final termination after the resolution of the grievance process was dated March 20, 2003) and that he was aware of plaintiff's affidavit testimony in the suit. Further, Juarez's job duties included review of terminations. Additionally, plaintiff alleges that Juarez limited the scope of the special investigatory panel (which reviewed plaintiff's termination) to the "dubious" testimony of the eyewitnesses and the "end result was that Plaintiff's termination was sustained based solely on the same suspect evidence." So, it could be argued that there is a factual dispute over whether or not Juarez's awareness of plaintiff's speech and union activities precipitated plaintiff's adverse employment action.

Yet, this factual dispute would hinge on the finding that defendant was treated differently than another employee who violated the same violence policy (which could imply that defendant faced different treatment because of his speech on union activities or because of union membership). Although this disparate treatment did occur, Juarez testifies in his deposition that the other workplace violence incident "took place prior to my getting here and I was not really involved with all of the details and review processes as I normally would get involved in the case." (Ex. 1 to Plaintiff's *Schultea* Statement, p.14, ll.11-14). As Juarez was not involved with the other workplace assault case, it follows that the implication of disparate treatment based on plaintiff's union speech and activities cannot be used to show that plaintiff's speech and activities precipitated the adverse employment action taken by Juarez. Thus, the Court finds that defendant Juarez is entitled to qualified immunity as to the claim against him in his individual capacity as plaintiff's *Schultea* statement and supporting exhibits do not establish a violation by Juarez of plaintiff's clearly established First Amendment rights.

Even assuming arguendo that plaintiff had established a prima facie First Amendment retaliation claim, the Court finds that the defendants have met their burden to show that "they would have come to the same conclusion [of the adverse employment action] in the absence of the protected conduct." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004).[3]

---

[3]Indications that defendants would have come to the same conclusion of termination of the defendant (and the decision to not allow plaintiff union representation in the appeals process as long as

In sum, all defendants are entitled to qualified immunity as to all claims against them in their individual capacities as plaintiff's *Schultea* statement does not establish a violation by defendants of plaintiff's clearly established First Amendment rights. Plaintiff has not supported his allegations with the factual specificity and precision as required by *Schultea* that he engaged in speech, on workplace safety issues, concerning matters of public concern. Also, plaintiff does not allege with *Schultea* factual specificity that Standish was aware of plaintiff's speech on union activities or association with the union (and therefore, there is no factual dispute that such speech or association

---

the union had not yet indicated whether it claimed the right to strike or engage in collective bargaining) in the absence of the alleged protected conduct include:

(1) defendant Juarez's response to request for admission no. 10, in which Juarez responded:

> Prior to making my final decision to uphold the staff's recommendation to terminate the plaintiff, I was informed by my staff that TAMUK had a previous case involving a female employee's 'pushing/shoving' another female employee. That case turned out to be the Gomez case. However, I felt that under my administration I was not going to tolerate this type of behavior, especially the more serious type of physical confrontation such as the one involving the plaintiff's striking another employee with his fist. I felt that if I didn't take this type of action against violence in the workplace, then these types of confrontation could escalate into more serious results at TAMUK possibly endangering other employees and/or our students.;

(2) defendant Standish's deposition testimony, in which Standish stated:

> in the physical plant it was put out specifically as striking somebody was an example of zero tolerance in violence in the workplace . . . . It was put out at the in the physical plant meeting in–around August of that year . . . . In the vehicle garage Mr. Moreno was at.; and

(3) the nonsuit of the state union lawsuit based upon the Rule 11 agreement

> that in the future, [the union] will be allowed to represent employees at [TAMUK] who choose [union] representation at their grievances" and that the union had to give the university " a statement that [the union] does not claim the right to strike and recognizes that it cannot engage in collective bargaining with TAMUK.

precipitated the adverse employment action taken by Standish). Further, plaintiff does not allege with factual, nonconclusory specificity as required by *Schultea* that Hartsfield's actions, based on his awareness of plaintiff's union activities, led to an adverse employment action (and therefore, there is no factual dispute that such speech or association precipitated an adverse employment action taken by Standish). Finally, the Court finds that plaintiff does not allege with factual, nonconclusory specificity as required by *Schultea* (and the alleged disparate treatment between this incident and the other workplace assault incident cannot be used as evidence) that Juarez's actions, based on his awareness of plaintiff's union speech and activities, led to an adverse employment action (and therefore, there is no factual dispute that such speech or association precipitated an adverse employment action taken by Juarez). Finally, even if the plaintiff had established a prima facie showing of a First Amendment retaliation claim, which he has failed to do, defendants have met their burden to show that the alleged adverse employment actions would have occurred in the absence of the alleged protected conduct.

***Objective Reasonableness of Defendants' Conduct***

Even assuming arguendo that the plaintiff had carried his burden as to the first step of the qualified immunity inquiry (and had established a violation of his clearly established First Amendment rights), defendants' conduct was objectively reasonable in light of clearly established law at the time of the incident. If a plaintiff has alleged a violation, the court must decide whether the conduct was objectively reasonable in light

of clearly established law at the time of the incident. Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).

Defendant Standish followed the zero tolerance policy on workplace violence announced to the physical plant employees, including plaintiff, in the investigation, suspension, and termination of plaintiff. Standish spoke with plaintiff, the employee who was assaulted, and two eyewitnesses (along with the supervisor of the eyewitnesses) about the incident. The assaulted employee and the two eyewitnesses corroborated each other's stories that plaintiff had struck the assaulted employee. Standish's conduct was clearly objectively reasonable, and as such, Standish is entitled to qualified immunity.

Hartsfield's alleged conduct (twice denying plaintiff union representation in the grievance procedure, which led to the sustainment of plaintiff's termination) also was objectively reasonable. Hartsfield was relying upon the interpretation of TAMUK's office of general counsel in this decision. Relying upon the recommendation of the university's general counsel is objectively reasonable conduct. Therefore, Hartsfield is entitled to qualified immunity.

Juarez, in his review of plaintiff's termination, appointed a special review panel "because he wanted to make sure that the evidence that was being presented . . . was accurate." This panel was an "addition to" the complaint and review process and was

created on Juarez's own initiative. The panel consisted of the Chief of TAMUK Police, the President of the Staff Counsel, and the local President of the union. After the panel's investigation, they reported their findings to Juarez, who then concluded the termination was appropriate. Clearly, Juarez's conduct in the review of plaintiff's termination and the decision of final termination was objectively reasonable. As such, Juarez is entitled to qualified immunity.

In conclusion, the Court finds that defendants are entitled to qualified immunity on all claims asserted against them for alleged constitutional violations in their individual capacities. Such claims are dismissed.

ORDERED this the ____20____ of ____Oct____, 2006.

_____
HAYDEN HEAD
CHIEF JUDGE